## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| JOHN BLAKLEY,<br>          Plaintiff, | Case No. 1:12-cv-30 |
| | Weber, J. |
| v. | Litkovitz, M.J. |
| UBS FINANCIAL SERVICES INC.,<br>          Defendant. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff, John Blakely, brings this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and Ohio Rev. Code § 4112 alleging that defendant UBS Financial Services, Inc. (defendant) discriminated against him on the basis of his age.  This matter is before the Court on defendant's motion to compel arbitration and dismiss plaintiff's complaint or, alternatively, stay this proceeding (Doc. 6), plaintiff's response in opposition (Doc. 11), and defendant's reply memorandum.  (Doc. 13).

**I. Background**

"In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Raasch v. NCR Corp.*, 254 F. Supp.2d 847, 851 (S.D. Ohio 2003).  Thus, the undersigned will review the pleadings and evidence submitted by the parties and construe the facts therein in a light most favorable to plaintiff.

Plaintiff filed the instant lawsuit alleging that defendant, his former employer, discriminated against him on the basis of his age in violation of federal and Ohio state law.  Plaintiff alleges that he was hired by defendant in May 2001 for the position of producing Branch Manager in Durham, North Carolina.  (Doc. 1 at 2).  Plaintiff claims that in the following

five years, the asset base of plaintiff's North Carolina branch more than tripled under his direction and that in 2006 he was promoted to the position of Complex Director in Cincinnati, Ohio. *Id.* Plaintiff further alleges that he excelled in his new position and doubled the asset base of the Cincinnati branch. (Doc. 1 at 3). Plaintiff states that he began reporting to a new boss, Peter Kaldis, in 2009 and his employment performance continued to be outstanding as he was ranked 12 and 13 of approximately 95 Complex Directors for defendant in 2009 and 2010, respectively. *Id.* On July 13, 2011, plaintiff's employment was terminated. *Id.* Defendant stated that plaintiff was terminated for failure to meet expectations and because of internal restructuring resulting in the elimination of his Complex Director position. *Id.* Plaintiff alleges that within a few days of his termination, defendant replaced him with a younger and less qualified Complex Director. *Id.* Plaintiff further alleges that shortly before his termination, Mr. Kaldis forced the demotion of plaintiff's Complex Administrative Manager, who was likewise replaced by a substantially younger individual. *Id.* Plaintiff contends that defendant has a pattern of terminating older Complex Directors and replacing them with younger, less qualified employees. *Id.*

Defendant asserts that plaintiff's lawsuit must be dismissed pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, because his claims are subject to a mandatory arbitration agreement existing between the parties. (Doc. 6 at 1). Alternatively, defendant requests that plaintiff's lawsuit be stayed pending the conclusion of arbitration. *Id.* In support of its motion, defendant has submitted: (1) the affidavit of Charles Clayton, defendant's human resources manager; (2) the Letter of Understanding (LOU) initialed and signed by plaintiff which contains the terms of the arbitration agreement; (3) the Field Management Compensation Plan (FMCP) governing plaintiff's prior position which similarly contains an arbitration clause; and

2

(4) an April 2011 email from the Manager of Field Management Compensation for UBS to UBS

management, including plaintiff, which included the FMCP as an attachment. (Doc. 6, Ex. A).

Mr. Clayton attests that "[p]laintiff was employed by [d]efendant and its predecessor in interest,

PaineWebber, from May 25, 2001 until his resignation on September 1, 2011." *Id.* at 2. The

LOU includes the following arbitration provision:

> With the exception of claims for injunctive relief or for the denial of benefits
> under UBS Financial Services' disability or medical plans, you and UBS
> Financial Services agree that, unless prohibited by applicable law, any disputes
> between you and UBS Financial Services, including claims concerning
> compensation, benefits or other terms or conditions of employment and
> termination of employment, or any claims for discrimination, retaliation or
> harassment, or any other claims whether they arise by statute or otherwise,
> including but not limited to, claims arising under . . . The Age Discrimination in
> Employment Act of 1967 . . . or any other federal, state, or local employment or
> discrimination law, rules or regulations, including wage and hour laws, will be
> determined by arbitration as authorized and governed by the arbitration law of the
> state of New Jersey.

(Doc. 6, Ex. A at 4). The FMCP contains an almost identical arbitration clause. *See* Doc. 6, Ex.

B at 2; Doc. 11, Ex. 1-A at 27. Defendant argues that these arbitration agreements are valid and

enforceable and preclude plaintiff's lawsuit.

Plaintiff opposes defendant's motion, asserting that there was not an enforceable

arbitration agreement between the parties at the time of plaintiff's termination in 2011. Plaintiff

has submitted his own affidavit in support of his arguments that the arbitration agreements are

unenforceable due to their indefinite language and, further, that the LOU was not in effect in

2011. *See* Doc. 11.

Defendant has filed its reply memorandum and this matter is now ripe for resolution.[1]

---

[1] Plaintiff has requested oral argument on the instant motion. The parties have filed extensive briefs in
which they have fully briefed all pertinent issues and submitted record evidence in support of their positions.
Because oral argument would not assist the resolution of defendant's motion, plaintiff's request for oral argument is

**II. Standard of Law**

The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA applies in the employment setting and agreements to arbitrate employment discrimination disputes have been enforced. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). Where a cause of action is determined to be covered by arbitration, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added).

"The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "'[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[,]'" arbitration should be enforced. *AT & T Technologies, Inc. v. Comms. Workers*, 475 U.S. 643, 650 (1986).

Further, "the Supreme Court has held that the FAA preempts state law regarding arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984)). However, state contract law governs issues of formation, such as validity, revocability, and enforceability, with respect to the arbitration clause. *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). *See also Walker v. Ryan's Family Steak Houses,*

---

denied.

*Inc.*, 400 F.3d 370, 377 (6th Cir. 2005).[2]

## III. Analysis

Defendant contends that the arbitration provisions contained in the LOU and FMCP are enforceable under the FAA and require dismissal of plaintiff's complaint or an order compelling arbitration. Plaintiff contends, at the outset, that the LOU and its arbitration provision were not in effect at the time of plaintiff's termination and, consequently, the only arbitration provision at issue is the one contained in the FMCP. Plaintiff further contends that the FMCP and its arbitration clause are unenforceable under both Ohio and New Jersey contract law.[3] In reply, defendant argues that the LOU was in effect in 2011 and that the arbitration provisions contained in both the LOU and FMCP are valid and enforceable.

In light of the parties' arguments, there are several issues to resolve. First, the Court must determine whether the LOU, the FMCP, or both, were in effect and controlling at the time plaintiff's employment was terminated. Second, the Court must decide whether the arbitration clauses contained in the LOU and the FMCP are enforceable under both Ohio and New Jersey state law. Third, in the event that the arbitration provisions are enforceable, the Court must determine whether to dismiss or stay the instant proceedings.

---

[2] The Sixth Circuit has consistently held that arbitration agreements pertaining to employment discrimination claims are enforceable. *See Scoville v. WSYX/ABC*, 425 F.3d 1012 (6th Cir. 2005) (enforcing arbitration of ADEA and Ohio Rev. Code § 4112 claims pursuant to arbitration agreement); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666-68 (6th Cir. 2003) (enforcing arbitration provision where plaintiff raised race and sex discrimination claims in Ohio state court); *Dantz v. American Apple Group, LLC*, 123 F. App'x 702 (6th Cir. 2005) (enforcing arbitration provision regarding plaintiff's Ohio state law discrimination claims).

[3] Both the LOU and FMCP contain provisions that they are governed by the arbitration laws of the State of New Jersey. *See* Doc. 6, Ex. A at 9 (LOU); Doc. 11, Ex. 1-A at 29 (FMCP). The LOU further contains a provision that it is "governed by the laws of the State of New Jersey without reference to the principles of conflict of law." (Doc. 6, Ex. A at 4). The parties do not argue for the application of New Jersey over Ohio law or vice versa but, rather, argue their positions under the laws of both states. Accordingly, the Court's analysis will include

1. <u>Both the LOU and the FMCP were in effect at the time of plaintiff's termination in January 2011.</u>

Plaintiff argues that he is not bound by the terms of the LOU as it had expired and was replaced with the 2011 FMCP at the time of his termination in 2011. In support, plaintiff attests that while he was attending a Field Leadership meeting conducted by defendant he attended a PowerPoint presentation (attached as Doc. 11, Ex. 1-B) during which he was informed by unspecified "UBS management that there would be no more LOU's and that the [FMCP] would be in effect moving forward." (Doc. 11, Ex. 1, ¶ 3, Plaintiff's Affidavit). Plaintiff further argues that defendant breached or repudiated the LOU by replacing it with the FMCP. (Doc. 11 at 8-9).

Defendant claims that the LOU remained in effect despite the introduction of the FMCP in 2011. Defendant notes that the LOU contains no expiration date and by its own terms may only be modified in writing and, thus, cannot be supplanted by offhand comments purportedly made by UBS management during a PowerPoint presentation. Further, defendant asserts that as the LOU refers to events in 2011, it was the intent of the parties that the LOU would remain in effect beyond 2010.

When analyzing a written contract,

[t]he court's paramount objective is to ascertain and give effect to the parties' intention. Generally courts presume that the parties' intent resides in the language they employ in the contract. When contract terms are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the clear contractual language.

*Rosepark Props v. Buess*, 855 N.E.2d 140, 147 (Ohio App. Ct. 2006). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 34 (Ohio 2007). *See also Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 892 A.2d 646, 656 (N.J. 2006)

---

determinations under both Ohio and New Jersey state law as to whether the arbitration clauses are enforceable.

("fundamental canons of contract construction require that [courts] examine the plain language of the contract and the parties' intent as evidenced by the contract's purpose and surrounding circumstances.") (internal citations and quotations omitted).  The Court considers the parties' arguments with these canons in mind.

At first glance, it appears that the LOU may be a temporary agreement which expired in 2011 given the LOU's full title: "2009 & 2010 Letter of Understanding."  (Doc. 6, Ex. A at 1). However, the content of the LOU indicates otherwise.  The LOU specifies that it "sets forth important information respecting how your compensation . . . will be determined for 2009 and 2010, *as well as* other important information about your employment."  *Id.* (emphasis added). While the LOU specifies a time period governing compensation, *i.e.,* 2009 and 2010, it sets forth no such time period for "other" employment information.  The plain language of the LOU indicates its provisions governing compensation were temporary in nature, but those involving "other important information about [plaintiff's] employment" were indefinite.  Further, as noted by defendant, the LOU discusses the criteria for awarding bonuses in 2011, *id.* at 3, which also supports a finding that the LOU did not expire in 2010 but remained in effect through, at least, 2011.  The remainder of the LOU includes the arbitration clause at issue and other general contract clauses, such as a non-solicitation clause.  *Id.* at 3-6.  There is no language in any of these general contract clauses specifying they are limited to the years 2009 and 2010.  Rather, the plain language of the Non-Solicitation and Confidential Information clauses, for example, specifies certain prohibitions "during your employment" suggesting the existence of obligations beyond the 2010 calendar year.  *Id.* at 3, 4.  In addition, the language contained in the "At-Will Employment" and "Miscellaneous" clauses supports a finding that the non-compensation based terms of the LOU were binding on both parties throughout the plaintiff's employment.  *See id.* at

7

5 ("This LOU . . . does not constitute and is not a guarantee of your employment by UBS for a specific term. . . . You acknowledge that your continued employment with UBS Financial Services is expressly conditioned on your acceptance of this [LOU]."). The LOU also contains language that the terms of the agreement "cannot be modified or changed unless such modification or change is authorized in writing by the Chief Executive Officer of UBS Financial Services or his authorized designee." *Id.* The inclusion of this term demonstrates that the LOU remained in effect subject only to written modification. Given the plain language of the LOU, the Court cannot conclude that the arbitration clause (as well as the other non-compensation based clauses) expired in 2010 and was not in effect at the time of plaintiff's termination.

The Court further finds that the introduction of the FMCP did not nullify the otherwise enforceable provisions of the LOU. The FMCP states at the outset that "[u]nless stated otherwise in a Letter of Understanding . . . this 2011 Field Management Plan ("Plan") will govern the 2011 compensation" for designated employees of defendant. (Doc. 11, Ex. 1-A at 3). Thus, to the extent the FMCP modifies the LOU, its plain language demonstrates that any modifications pertain only to the terms of compensation. The vast majority of the FMCP explains the terms for calculating compensation for specific employees. Further, the FMCP provides that it is a summarization of compensation elements. *Id.* at 29. As there is no written modification of the non-compensation based terms contained in the LOU, including the arbitration clause,[4] the undersigned cannot conclude that the introduction of the FMCP is a repudiation of the LOU in regards to the non-compensation terms of plaintiff's employment. This interpretation is further supported by the FMCP's express provision that "[u]nless otherwise provided in a LOU signed by [UBS], this Plan governs your compensation and fully supersedes

---

[4] Notably, the FMCP includes an arbitration clause almost identical to that contained in the LOU. (Doc. 11, Ex. 1-A at 27).

all prior agreements, understandings, discussions and negotiations relating to the subject matter of this Plan." *Id.* at 31. This provision indicates that the LOU would be the controlling document regarding plaintiff's employment and that any terms included in the FMCP would not be enforceable to the extent they contradicted the LOU. Given the plain terms of both the LOU and the FMCP, it is clear that the LOU was intended to be the operative agreement between the parties regarding the non-compensation terms of plaintiff's employment with the compensation terms of plaintiff's employment to be governed by plans such as the FMCP unless otherwise stated in the LOU.

Insofar as plaintiff argues that the LOU was modified by the FMCP based on statements from an unknown UBS manager, plaintiff's argument is not well-taken. The LOU expressly provides that it is subject to modification only by "writing by the Chief Executive Officer of UBS Financial Services or his authorized designee." (Doc. 6, Ex. A at 5). Oral statements made by a UBS employee during a company meeting, in themselves, are insufficient to modify the terms of the LOU given its plain, unambiguous terms.

Plaintiff has cited to no authority, nor is the Court aware of any, which would support a finding that the non-compensation based terms of the LOU were nullified by the introduction of the FMCP given the clear and unambiguous language of the instruments. Accordingly, the undersigned finds that the arbitration clause contained in the LOU was in effect at the time of plaintiff's termination in 2011. The Court now turns to the issue of whether the arbitration clause is enforceable such that plaintiff's lawsuit must be stayed.

2. The arbitration clauses in both the LOU and the FMCP are enforceable.

Aside from his contention that the LOU had expired at the time of his termination, plaintiff does not contend that the LOU arbitration provision is unenforceable. Indeed, plaintiff's

argument that the arbitration provision is unenforceable pertains exclusively to the FMCP. Because the Court determines that the LOU remained in effect at the time of plaintiff's termination and was not replaced by the FMCP, and in the absence of any contrary argument, the undersigned finds that the arbitration provision contained in the LOU is enforceable.

Alternatively, to the extent the District Court finds that the FMCP is the operative agreement, the undersigned considers the parties' arguments on the enforceability of the arbitration provision contained therein.

As previously noted, when determining whether arbitration agreements are enforceable courts are to utilize state law contract principles. *Perry*, 482 U.S. at 492 n.9. Under both Ohio and New Jersey law, arbitration agreements are contracts and must be supported by adequate consideration in order to be enforceable. *See Harmon v. Philip Morris Inc.*, 697 N.E.2d 270, 271 (Ohio Ct. App. 1997); *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 878-79 (N.J. 2002). *See also* Restatement (Second) of Contracts § 17 (1981) ("the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."). "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Brads v. First Baptist Church*, 624 N.E.2d 737, 743 (Ohio 1993); *Devaney v. L'Esperance, Jr.*, 949 A.2d 743, 751 (N.J. 2003) (Long, J., concurring). A promise of payment for employment constitutes consideration only when it creates a mutually binding obligation on behalf of both employee and employer. *Stanich v. Hissong Group, Inc.*, No. 2:09-cv-143, 2010 WL 3732129, at *5 (S.D. Ohio Sept. 20, 2010); *Martindale*, 800 A.2d at 879.

Plaintiff argues that the FMCP arbitration clause is unenforceable under both Ohio and New Jersey contract law as it contains an illusory promise on behalf of defendant. An illusory promise is essentially an empty one whereby performance by the promisor, here, the

10

defendant, is entirely optional. *Stanich*, 2010 WL 3732129, at *5; *Customized Distribution Srvs. V. Zurich Ins. Co.*, 862 A.2d 560, 567 (N.J. App. Ct. 2004). *See also* Restatement (Second) of Contracts § 77 (1981) ("Illusory promises. Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise."). Plaintiff contends that defendant retained the unilateral right to change and alter the terms of the FMCP without notice such that its promise to arbitrate is illusory, making the arbitration clause unenforceable. The relevant portion of the FMCP -- the amendment provision -- provides:

> [t]his Plan is not a promise, an agreement or a contract that your employment is guaranteed or that the policies and practices that are described will always be the same. Your employment remains at will. UBS in its sole and absolute discretion and without notice, may add to, modify, change or rescind any of the policies, practices, procedures or guidelines in whole or in part at any time. In the event of changes, you *may be* notified via e-mail and they *will be* posted on Business Support Overview (the Firm's intranet).

(Doc. 11, Ex. 1-A at 29) (emphasis added).

Defendant asserts that despite their retention of the right to alter the FMCP, the arbitration provision is enforceable as: (1) the FMCP requires that any changes be posted on the company's intranet; (2) defendant is limited in its ability to modify the contract under the implied covenant of good faith and fair dealing; and (3) the amendment provision, which appears under the heading "Eligibility and Distribution of 2011 Year-End Bonuses," does not apply to the arbitration provision. For the following reasons, the Court finds that the FMCP arbitration provision is enforceable.

First, as previously noted, the unambiguous terms of the FMCP demonstrate that it governs 2011 compensation and does not otherwise supersede the employment agreement contained in the LOU, including the arbitration provision.

Second, the amendment provision of the FMCP does not make the arbitration provision

unenforceable as defendant is required to provide notice by posting any changes on its internal intranet. (Doc. 11, Ex. 1-A at 29). Courts have found arbitration agreements enforceable even where an employer retains the unilateral right to alter the agreement provided the agreement requires the employer to give notice of changes. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667-68 (6th Cir. 2003); *Bourgeois v. Nordstrom, Inc.*, No. 11-2442, 2012 WL 42917, at *5-6 (D.N.J. Jan. 9, 2012). Here, defendant is required under the FMCP to provide notice of any changes to the FMCP, including the arbitration provision; thus, the agreement remains enforceable.

The Court recognizes that *Morrison* and *Bourgeois* are distinguishable insofar as the amendment provisions in those cases provided for advance notice of any alteration to the arbitration agreement. *See Morrison*, 317 F.3d at 668; *Bourgeois*, 2012 WL 42917, at *5. Nevertheless, the lack of advance notice does not make the FMCP arbitration agreement unenforceable. The amendment provision here, unlike those in *Morrison* and *Bourgeois*, is not specific to the arbitration provision but, rather, pertains to the policies and practices described in the FMCP which, as previously stated, primarily concerns the calculation of compensation for certain UBS employees. *See* Doc. 11, Ex. 1-A at 29. Thus, the intent of the amendment provision appears to retain for defendant the right to alter its compensation methods and not its arbitration agreement. Viewing the amendment provision in the context of the FMCP's purpose, the inclusion of a second arbitration provision in the FMCP further supports a finding that defendant's intent was to be bound to the agreement to arbitrate employee disputes while retaining the right to alter its compensation practices. Given the nature and purpose of the FMCP, the categorical separation of the amendment provision from the arbitration provision, and the fact that defendant's intent to be bound by the arbitration provision is indisputable, the Court

12

finds that the amendment provision, which includes a notice requirement, does not make the FMCP arbitration provision unenforceable.

In arguing that the arbitration agreement is unenforceable due to the amendment provision, plaintiff relies heavily on *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000), where the Sixth Circuit held that an arbitration agreement was unenforceable because the non-employee party had unfettered discretion to unilaterally alter the applicable arbitration rules and procedures with no obligation to notify the employees. *Floss* is distinguishable from the instant matter for several reasons. First, in *Floss*, the arbitration agreement was not an agreement between the plaintiff and his employer but, rather, an agreement with a third party dispute resolution provider. *Id.* at 309-10. Second, the arbitration agreement was a stand-alone agreement and not a provision of a larger employment agreement. *Id.* at 309. Third, the amendment provision allowing unilateral alteration of the arbitral rules and procedures was contained within the arbitration provision itself, *id.* at 310, whereas, here, the amendment provision is separated from the arbitration provision of the FMCP and contained in an entirely different section entitled "Eligibility and Distribution of 2011 Year-End Bonuses." Fourth, the *Floss* arbitration agreement did not require the dispute resolution provider to notify employees of any changes, *id.* at 315-16; here, defendant must provide notice to employees of changes to the FMCP via its intranet. Lastly, defendant in the instant case has obligated itself to be bound by and resolve disputes through arbitration; conversely, the only consideration provided by the *Floss* employer was to provide a forum for arbitration in exchange for the employee's promise to submit disputes to arbitration. *Id.* at 315. Given these distinctions, *Floss* is not controlling in the instant matter.

Regardless, even though UBS is not required to give employees prior notice of changes

13

to the FMCP, the undersigned finds that plaintiff gave his assent to be bound by its terms. In

*Dantz v. American Apple Group, LLC*, 123 F. App'x 702 (6th Cir. 2005), the Sixth Circuit held

that where an at-will employee is made explicitly aware that agreement to an arbitration

provision is a term of employment, the act of continuing employment constitutes implied assent

such that the arbitration provision is enforceable. *See Dantz*, 123 F. App'x at 707. Here, the

record reflects that plaintiff was given a copy of the FMCP, including the arbitration agreement.

*See* Doc. 6, Ex. 1-C. The FMCP provides that "[t]he continuation of your employment after

receipt of this Plain and/or acceptance of benefits hereunder shall be deemed your consent and

agreement to its terms." (Doc. 11, Ex. A at 29). As the FMCP explicitly provides that its terms,

including the arbitration agreement, were part of the terms of plaintiff's employment at UBS, his

decision to continue working for UBS after receiving the FMCP is a manifestation of his assent

to the arbitration provision. Moreover, even though defendant retained the right to alter the

terms of the FMCP, plaintiff's "continued employment alone was sufficient consideration" to

support enforcing the arbitration provision. *Dantz*, 123 F. App'x at 709 (continued employment

is sufficient consideration to support enforcement of arbitration agreement). *See also Lake Land

Emp. Group of Akron, LLC v. Columber*, 804 N.E.2d 27 (Ohio 2004) ("consideration exists to

support a noncompetition agreement when, in exchange for the assent of an at-will employee to a

proffered noncompetition agreement, the employer continues an at-will employment relationship

that could legally be terminated without cause."). Here, where plaintiff and UBS had an at-will

employment arrangement, either party was capable of ending the relationship at any time and for

any reason. Had UBS chosen to drastically reduce plaintiff's compensation, he had the option of

agreeing to those terms or resigning his employment with UBS. Similarly, when UBS provided

plaintiff with the FMCP which governed the terms of his pay and notified him, again, that his

14

continued employment included his assent to arbitrate any potential disputes based on age

discrimination, plaintiff had the option to either reject the employment term and quit or continue

working for UBS, which he did. Plaintiff's continued employment with UBS is sufficient

consideration to support enforcement of the FMCP's arbitration provision.

The undersigned also concludes that the FMCP arbitration provision is enforceable as the

defendant is bound by the implied duty of good faith and fair dealing. Both Ohio and New

Jersey courts recognize that there is an implied and binding duty of good faith and fair dealing in

all contracts. *See Littlejohn v. Parrish*, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005); *R.J. Gaydos*

*Ins. Agency, Inc. v. National Consumer Ins. Co.*, 773 A.2d 1132, 1145-46 (N.J. 2001).

Defendant's duty to adhere to the implied covenant of good faith and fair dealing prohibits it

from making alterations to the FMCP, including the arbitration provision, for an improper or

oppressive purpose. *See Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 479 (6th Cir. 2005)

(finding that implied duty of good faith and fair dealing made arbitration agreement enforceable

despite language permitting employer to unilaterally amend the agreement). *Accord Brubaker v.*

*Barrett*, 801 F. Supp.2d 7443, 754-55 (E.D. Tenn. 2011). As defendant was prohibited by its

good faith duty from making changes inconsistent with the purpose of the FMCP arbitration

provision, it is enforceable despite the existence of the amendment provision.

Plaintiff's final argument is that the FMCP arbitration provision is unenforceable under

New Jersey law because plaintiff did not give his assent to the terms of the FMCP and,

consequently, he has not waived his statutory rights to bring his discrimination claims in federal

court as permitted by the ADEA.[5] In support, plaintiff cites to *Leodori v. CIGNA Corp.*, 814

A.2d 1098, 1107 (N.J. 2003), where the New Jersey Supreme Court held that an arbitration

---

[5] As plaintiff raises this argument under New Jersey law only, the Court declines to analyze the issue under Ohio state law.

provision was unenforceable due to the employee's lack of assent to its terms.  In reaching this conclusion, the *Leodori* court focused on two inquiries: (1) whether the waiver-of-rights provision reflected that the employee had unambiguously and clearly agreed to arbitrate the dispute; and (2) if yes, whether the record before the court indicated that the employee had clearly agreed to the waiver-of-rights provision.  *Id.* at 1104.  Plaintiff does not dispute that the FMCP arbitration provision reflects an unambiguous intention to arbitrate his statutory claims.  Thus, the only inquiry is whether the instant record reflects that plaintiff agreed to the FMCP arbitration provision.

Plaintiff argues that the lack of evidence of clear assent, such as his signature, demonstrates that he did not clearly agree to arbitrate his discrimination claims.  In support, plaintiff cites to his affidavit statements that he was unaware of the arbitration provision and that he did not read the FMCP because he had been party to a conference call where its terms where discussed.  *See* Doc. 11, Ex. 1, ¶¶ 2-3.  Plaintiff further speculates that defendant failed to discuss the arbitration provision in an attempt to purposefully mislead him as to the terms of the FMCP.  *See* Doc. 11 at 9.  Plaintiff's arguments are not persuasive.

Notably, plaintiff does not acknowledge that he gave affirmative, written consent to be bound by an arbitration provision when he signed the LOU.  Given the existence of a signed and enforceable agreement binding plaintiff to arbitrate his discrimination claims, plaintiff's argument that he did not waive his statutory rights by virtue of not signing a second arbitration provision is unpersuasive.  Nor is plaintiff's failure to read and review the FMCP a valid basis for determining that he did not agree to its terms.  Plaintiff does not dispute that he received the FMCP, but simply states that he declined to read it as he relied on summaries of the FMCP given in a conference call and via a PowerPoint presentation.  Plaintiff fails to acknowledge that the

PowerPoint presentation clearly states that it "is only intended as a summary of the [FMCP] . . . [i]n the event of any inconsistencies between this document and the [FMCP], the terms and conditions of the [FMCP] control." (Doc. 11, Ex. 1-B at 3). Moreover, the record demonstrates that plaintiff was directed to print out and view the FMCP in April 2011, when he and other UBS employees received a copy of the FMCP as an attachment in an email. *See* Doc. 6, Ex. 1-C (April 2011 email to plaintiff and others). Given the clear direction that the PowerPoint was only a summary of the Plan and that plaintiff should review the FMCP in its entirety, and the undisputed evidence that plaintiff was provided a copy of the FMCP and advised to review it via an April 2011 email, his reliance on the PowerPoint presentation as a full and complete detailing of the FMCP's terms is misguided. Further, considering this explicit language of the PowerPoint presentation – to not rely on the PowerPoint as a complete summary of the FMCP - the undersigned rejects plaintiff's contention that defendant intentionally misrepresented the terms of the FMCP.

Lastly, although there is no record evidence demonstrating that plaintiff signed the FMCP, in the context of employment relationships assent to contractual terms may be found in the absence of such demonstrative evidence. *See Leodori*, 814 A.2d at 1105-06. In *Leodori*, the court found the omission of the employee's signature on the arbitration agreement form was sufficient evidence to determine that he had not given his assent to waive his statutory rights and, consequently, the arbitration provision was not enforceable. While the *Leodori* court acknowledged that such contracts do not need to be in writing to be enforceable, that, "[w]hen one party, however, presents a contract for signature to another party, the omission of that party's signature is a significant factor in determining whether the two parties mutually have reached an agreement." *Id.* at 1106. The court's inquiry focused on the fact that the arbitration agreement

required a signature but the plaintiff had not signed it.  *Id*.  The court thus concluded that without

any other evidence of assent to the provision, the lack of plaintiff's required signature

demonstrated that the parties had not mutually agreed to the terms and thus the arbitration

agreement was unenforceable.  Here, however, there is no direct evidence of plaintiff's lack of

assent, such as a missing signature on a contract requesting a signature, and the Court must look

to the record for "some other unmistakable indication that [plaintiff] affirmatively had agreed to

arbitrate his claims."  *Id*. at 1107.  The record includes such evidence of plaintiff's assent to

arbitrate as he signed the LOU which contained an arbitration provision almost identical to that

in the FMCP.  Further, plaintiff's continued employment with defendant after receiving the

FMCP supports a finding that he assented to its terms.  *See Eichenlaub v. Anheuser-Busch, Inc.*,

No. HNT-L-274-04, 2005 WL 3113561 (N.J. Super. Oct. 19, 2005) (finding that employees

assented to arbitration agreement and waived statutory rights where they were made aware of

and provided a copy of the arbitration policy and continued working for employer, and noting

that the matter was distinguishable from *Leodori* as the employer did not request a signature and,

thus, the omission of employee's signature was not evidence of lack of assent).  Given plaintiff's

prior signatory assent to the LOU arbitration provision and the fact that he was provided a copy

of the FMCP and continued to work for defendant, the Court finds that plaintiff gave affirmative

assent to be bound by the FMCP arbitration provision.[6]

     For the above reasons, the undersigned finds that the FMCP arbitration provision is

enforceable.

---

[6]Notably, even if the undersigned were to find that the FMCP arbitration agreement was unenforceable in light of the amendment provision, the Court may sever the amendment provision in order to enforce the otherwise valid agreement.  *See, e.g.*, *McMullen v. Meijer, Inc.*, 166 F. App'x 164, 169 (6th Cir. 2006).

3. <u>The instant matter should be stayed pending arbitration of plaintiff's claims.</u>

The Sixth Circuit has articulated the steps a court must take in determining whether to

stay a case pending arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (quoting *Stout v. J.D. Byrider*,

228 F.3d 709, 714 (6th Cir. 2000)). Upon review of factors (1) and (2), the record demonstrates

that the parties have agreed to arbitrate plaintiff's ADEA and state law discrimination claims. As

to factor (3), the Supreme Court has determined that plaintiff's federal statutory ADEA claim is

subject to arbitration agreements as nothing in the ADEA's legislative history or the ADEA itself

indicates that Congress intended to preclude arbitration of such claims. *See Gilmer*, 500 U.S. 20,

27-29.[7] Lastly, as the undersigned finds that all of plaintiff's claims are subject to the arbitration

agreement contained in the LOU or, alternatively, the FMCP, the Court must stay plaintiff's

lawsuit. *See Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) ("If a plaintiff's

cause of action is covered by an arbitration clause, the court must stay the proceedings until the

arbitration process is complete.").

In light of the strong policy favoring arbitration agreements and the instant determination

that the arbitration clauses contained in the LOU and FMCP are enforceable, the Court

recommends that the entire case be stayed pending the outcome of arbitration.

---

[7] Significantly, the Supreme Court noted that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* at 26 (citations omitted).

## IT IS THEREFORE RECOMMENDED:

1. Defendant's motion to compel arbitration and dismiss plaintiff's complaint or, alternatively, stay this proceeding (Doc. 6) should be **GRANTED** and this matter should be **STAYED** pursuant to 9 U.S.C. § 3 pending arbitration of plaintiff's claims.

2. The parties should be directed to file status reports every 60 days apprising the Court of the status of arbitration proceedings.

3. This matter should be administratively stayed on the docket of the Court, subject to reopening by motion of a party upon the final termination of arbitration proceedings.

1/30/2013
Date

KAREN L. LITKOVITZ
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JOHN BLAKLEY,
     Plaintiff,

     v.

UBS FINANCIAL SERVICES INC.,
     Defendant.

Case No. 1:12-cv-30

Weber, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).